Donald J. Kennedy
Mark R. Zancolli
Iliza B. Weitzer
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, New York 10005
Telephone: (212) 732-3200
Facsimile: (212) 732-3232
Email: kennedy@clm.com
        zancolli@clm.com
        weitzer@clm.com
*Attorneys for Applicant*
*Federal Agency for State Property*
*Management of the Russian Federation (Rosimuschestvo)*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------- x
In re APPLICATION Pursuant to 28 U.S.C.          :
§ 1782 for an Order Permitting the Federal       :      No. _19-mc-168__
Agency for State Property Management of the      :
Russian Federation (Rosimuschestvo) to Take     :
Discovery From The Blackstone Group L.P.  for    :
Use in Foreign Proceedings.                      :
                                                 :
                                                 :
                                                 :
------------------------------------------------------- x
```

**MEMORANDUM OF LAW IN SUPPORT OF THE APPLICATION OF THE FEDERAL AGENCY FOR STATE PROPERTY MANAGEMENT OF THE RUSSIAN FEDERATION (ROSIMUSCHESTVO) PURSUANT TO 28 U.S.C. § 1782 FOR AN ORDER PERMITTING DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... ii-iii

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ...................................................................................... 1

ARGUMENT

POINT I

THIS APPLICATION SATISFIES THE REQUIREMENTS OF 28 U.S.C. § 1782..................... 5

POINT II

THE COURT SHOULD GRANT THIS APPLICATION BECAUSE  DOING SO WOULD PROMOTE THE POLICY UNDERLYING SECTION 1782 .........................................7

POINT III

DISCRETIONARY FACTORS WEIGH IN FAVOR OF GRANTING THIS APPLICATION ............................................................................................................ 7

CONCLUSION ............................................................................................................ 10

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Brandi-Dohrn v. IKB Deutsche Industriebank AG,
  673 F.3d 76 (2d Cir. 2012)......................................................................................................8

Chevron Corp. v. Berlinger,
  629 F.3d 297 (2d Cir. 2011).....................................................................................................6

Euromepa, S.A. v. R. Esmerian, Inc.,
  154 F.3d 24 (2d Cir. 1998)......................................................................................................5

Euromepa S.A. v. R. Esmerian, Inc.,
  51 F.3d 1095 (2d Cir. 1995)....................................................................................................8

In re Application of Esses,
  101 F.3d 873 (2d Cir. 1996).....................................................................................................6

In re Bloomfield Inv. Res. Corp.,
  315 F.R.D. 165 (S.D.N.Y. 2016) ..........................................................................................10

In re Gemeinshcaftspraxis,
  No. M19-88, 2006 US Dist LEXIS 94161 (S.D.N.Y. Dec. 29, 2006).......................................9

In re Kleimar N.V.,
  220 F Supp 3d 517 (S.D.N.Y. 2016).......................................................................................6

In re Servicio Pan Americano De Proteccion,
  354 F. Supp.2d 269 (S.D.N.Y. 2004)......................................................................................6

Intel Corp. v. Advanced Micro Devices, Inc.,
  542 U.S. 241 (2004)......................................................................................................6, 7, 8

Metallgesellschaft AG v. Hodapp,
  121 F.3d 77 (2d Cir. 1997).................................................................................................5, 7, 9

Minatec Fin. S.A.R.L. v. SI Grp. Inc.,
  No. 1:08-CV-269, 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) ...........................................9

Nat'l Broad. Co. v. Bear Stearns & Co.,
  165 F.3d 184 (2d Cir. 1999).....................................................................................................6

ii

OJSC Ukrnafta v Carpatsky Petroleum Corp.,
    No. 09-MC-265, 2009 US Dist LEXIS 109492 (D. Conn Aug. 27, 2009)................................6

**STATUTES**

28 U.S.C. § 1782................................................................................................................... passim

8464626.1

## PRELIMINARY STATEMENT

Applicant the Federal Agency for State Property Management of the Russian Federation (Rosimuschestvo) ("Rosimuschestvo" or the "Applicant"), by its New York attorneys in this case, Carter Ledyard & Milburn LLP, respectfully submits this Memorandum of Law pursuant to 28 U.S.C. § 1782 for an order authorizing it to serve a subpoena for the production of documents by The Blackstone Group L.P. ("Blackstone"). The discovery sought will be used to ascertain and preserve assets and property of Saraf Agencies Private Limited ("SAPL") to enforce an interim award issued in Rosimuschestvo's favor by an arbitral tribunal in India as part of a pending arbitration proceeding against SAPL. The discovery sought may also support a contempt application by Rosimuschestvo before the Calcutta High Court in India should it evidence that SAPL violated an order by that court as a result of a transaction with Blackstone through SAPL's subsidiary, Forum Projects Private Limited ("FPPL"). This application seeks (1) production of documents regarding transaction details between Blackstone and FPPL related to the acquisition of a 74% stake in FPPL's mall project, titled Forum Esplanade, located in Bhubaneswar, State of Orissa, India, and (2) the documents received by Blackstone from FPPL to conduct Blackstone's due diligence prior to acquisition of the aforementioned 74% stake.

## FACTUAL BACKGROUND

The relevant factual background is set forth in the accompanying Declaration of Evgeny Raschevsky, dated March 21, 2019 ("Raschevsky Decl."), which is incorporated herein by reference. In summary, this application seeks discovery necessary for Rosimuschestvo's attempt to enforce an interim award that was issued in its favor as part of an ongoing arbitration proceeding in India (the "Arbitration Proceeding"). The interim award, totaling INR 1,351,692,947.73 (approximately $20 million), was issued on October 14, 2016 and represents repayment of a portion of Rosimuschestvo's initial investment in a joint venture with SAPL, and

1

others, that SAPL allegedly misappropriated (the "Interim Award"). (Raschevsky Decl. at ¶ 25, Ex. 1). On November 29, 2016, the Calcutta High Court issued an order supporting the Interim Award in favor of Rosimuschestvo (the "November 29, 2016 Order"). (Id. at ¶ 27, Ex. 2). That order, effective indefinitely, prohibits SAPL from alienating, encumbering and/or creating any third party interest over its fixed assets or properties, and it requires that any dilution of SAPL's shares abide by the result of the application for interim measures and put the transferee on notice of the pending proceedings. (Id., Exs. 2 and 27).

Despite the specific terms of the November 29, 2016 Order directing that SAPL shall not encumber or create any third party interest over its assets, in 2017 SAPL concluded loan agreements with Allahabad Bank for the total amount of INR 1.95 billion placing its various tangible and intangible assets as security. (Id. at ¶ 28). In light of that, on December 1, 2017, Rosimuschestvo filed a new application under Section 9 of the Arbitration and Conciliation Act of India 1996 ("the Act") before the Calcutta High Court in support of the Interim Award seeking that SAPL deposit the amount awarded by the Arbitral Tribunal, as well as an application under the Contempt of Courts Act 1971 against SAPL and its directors (Id., Exs. 29 & 30).

Within the proceedings on the Section 9 application, SAPL alleged that it does not have the funds to comply with any order sought in the petition. (Id. at ¶ 29). On February 5, 2018, the Calcutta High Court ordered SAPL to furnish a bank guarantee in the amount of INR 1,351,692,947.73. In its judgment, the Court stated the following:

"[…] it is evidently clear that the respondent no. 1 [SAPL] has created various charges on all its assets and properties in favour of its bankers in defiance of the order of the subsisting injunction dated November 29, 2016, passed in A.P. No. 1013 of 2016. The respondent no. 1 has even charged all its bank accounts in favour of its bankers. In its affidavit in opposition the respondent no. 1 has claimed that it has no money to deposit in Court even it is directed to do so. All these facts, substantiate the apprehension expressed by the

8464626.1

petitioner that in the present the sole object of the respondent no. 1 to make its assets and properties inaccessible to its creditors and reduce the award dated October 14, 2016 passed by the learned Arbitral Tribunal into a paper decree by the time it is ripe for enforcement. (Id., Ex. 31).

SAPL filed an appeal against the said order, but it was withdrawn on May 8, 2018. (Id., Ex. 32). The bank guarantee, however, has not yet been provided by SAPL as required by the judgment of February 5, 2018. (Id.).

Notwithstanding the existence of interim orders limiting SAPL's right to alienate and encumber its existing assets and directing it to furnish a bank guarantee in the amount of the interim award, SAPL executed a Share Pledge Agreement of April 24, 2018 securing borrowings from two group companies (Forum Projects Private Limited and Forum Properties Holding Private Limited) up to INR 400 crores [INR 4 billion] in favor of a consortium of financers with SAPL's shares in two other group companies (Aarya Constructions Private Limited and Bestlite Mercantile Private Limited), therefore pursuing its design of dilution of its assets. (Id. at ¶ 30).

Additionally, SAPL approached the Calcutta High Court with a fresh petition seeking authorization to execute a loan agreement (yet including a fresh mortgage and hypothecation of assets amounting to INR 173.78 crores [INR 1,737,800,000]), already signed in July 2018 with Allahabad bank. (Id. at ¶ 31). SAPL's petition was rejected by the Calcutta High Court by way of an order issued on October 1, 2018. (Id., Ex. 33). On October 10, 2018 SAPL filed an appeal of the Order dated October 1, 2018 which remains pending before the Calcutta High Court. (Id. at ¶ 32).

In light of continuous efforts to dilute its assets, Rosimuschestvo filed a second application under the Contempt of Courts Act 1971 against SAPL and others, as SAPL's actions towards creation of further charges were inconsistent and in disregard of the order of February 5, 2018 directing it to furnish a Bank Guarantee to the Court's Registrar in the amount of the interim

8464626.1

award.  (Id. at ¶ 33).  This Second Contempt Application was filed on November 13, 2018 before the High Court of Calcutta.  (Id., Ex. 34).  Both applications under the Contempt of Courts Act 1971 are still pending before the Calcutta High Court.  (Id. at ¶ 34).

Forum Projects Private Limited ("FPPL") is a real estate developer and a subsidiary of SAPL, where both S.M. Shroff (Director of SAPL) and Rahul Saraf are directors and exert significant influence on it.  (Id. at ¶¶ 37 and 9, Exs. 36 and 37).  According to publicly available information, in January 2018, The Blackstone Group L.P. entered into a partnership with FPPL having invested about INR 3 billion secured by a 74% stake in FPPL's mall project Forum Esplanade located in Bhubaneswar, State of Orissa, India.  (Id. at ¶ 38, Ex. 39).  As described above, under the November 29, 2016 Order, SAPL is prohibited from alienating, encumbering and/or creating any third party interest over its fixed assets and properties, and any dilution of shares shall abide by the result of the application for interim measures and the transferee shall be put on notice of the pending proceedings.  (Id. at ¶ 39).  It is therefore likely that the above transaction between FPPL and The Blackstone Group L.P. could violate the orders of the Calcutta High Court dated November 29, 2016 and February 5, 2018 and can be a basis for a contempt application against SAPL being in willful, deliberate and clear disregard of the Court's orders under the Contempt of Courts Act 1971.  (Id.).  This, however, cannot be conclusively determined without having details of the transaction.  (Id.).

In order to give Rosimuschestvo an opportunity to discover the assets of Saraf Agencies Private Limited and its group companies so as to enforce the Interim Award, or alternatively to enable Rosimuschestvo to secure the amount of the Interim Award and to determine if SAPL is in willful, deliberate and clear disregard  of the orders of the Calcutta High Court dated November 29, 2016 and February 5, 2018 and an application under the Contempt of Courts Act

8464626.1

1971 can be filed against it, it is respectfully requested that the Court authorize Rosimuschestvo's New York attorneys in this case, Carter Ledyard & Milburn LLP, to serve a subpoena on The Blackstone Group L.P. requesting documents concerning the following: (1) the transaction details, including the underlying agreements and bank statements or other documents containing bank account numbers, between FPPL and The Blackstone Group L.P., related to the acquisition of a 74% stake in FPPL's mall project Forum Esplanade located in Bhubaneswar, State of Orissa, India; and (2) the documents received by The Blackstone Group L.P. from FPPL during pre-acquisition due diligence. (Id. at ¶ 41).

## ARGUMENT

## POINT I

### THIS APPLICATION SATISFIES
### THE REQUIREMENTS OF 28 U.S.C. § 1782

Section 1782 provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court . . . .

28 U.S.C. § 1782(a). In this Circuit, a district court may grant discovery under Section 1782 where (1) the party from whom discovery is sought can be found in the district where the application is made; (2) the discovery will be used in a foreign proceeding; and (3) the party seeking discovery is an "interested person" in the foreign proceeding. See, e.g., Euromepa, S.A. v. R. Esmerian, Inc., 154 F.3d 24, 27 (2d Cir. 1998); Metallgesellschaft AG v. Hodapp, 121 F.3d

77, 77-78 (2d Cir. 1997).  "Section 1782 may be invoked even where foreign legal proceedings are not even underway, provided that a 'dispositive ruling…[is] within reasonable contemplation.'"  In re Servicio Pan Americano De Proteccion, 354 F. Supp.2d 269, 274 (S.D.N.Y. 2004) (quoting Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004)). An arbitration proceeding may be considered a "foreign or international tribunal" for purposes of Section 1782.  See In re Kleimar N.V., 220 F Supp 3d 517, 522 (S.D.N.Y. 2016).[1]

Here, all three requirements of Section 1782 are satisfied.  First, Blackstone can be found in this district, as its headquarters are located at 345 Park Avenue, New York, New York 10154. (Raschevsky Decl. ¶ 3).  Second, the discovery that Rosimuschestvo seeks is necessary to ascertain the existence and ensure the preservation of SAPL's assets and properties to satisfy the Interim Award and to determine the extent to which SAPL is in contempt of the November 29, 2016 Order.

Third, as a party to the Arbitration Proceeding and an applicant before the Calcutta High Court, Rosimuschestvo is an "interested party" in those proceedings.  See In re Application of Esses, 101 F.3d 873, 875 (2d Cir. 1996) (per curiam) (ruling that the applicant was an "interested person" within the meaning of Section 1782 because he was a party to the foreign proceedings) (quoting S. Rep. No. 1580, 88th Cong., 2d Sess., at 8 (1964) (an "interested person" includes one who is a "party to . . . foreign or international litigation")).  Furthermore, the Interim Award was granted in favor of Rosimuschestvo, and thus Rosimuschestvo has a direct interest in the

---

[1] In Nat'l Broad. Co. v. Bear Stearns & Co., 165 F.3d 184, 191 (2d Cir. 1999), the Second Circuit held that Section 1782 does not "apply to an arbitral body established by private parties."  Since then, in dicta, the Supreme Court has indicated that private arbitration is contemplated by Section 1782, calling Nat'l Broad. Co. into question.  See Intel Corp., 542 U.S. at 258.  The Second Circuit has not re-visited whether private arbitration is within the scope of Section 1782.  See Chevron Corp. v. Berlinger, 629 F.3d 297, 310-11 (2d Cir. 2011) (declining to reach the argument that an arbitral tribunal established by international treaty is not a "tribunal" under section 1782). However, at least two District Courts in the Second Circuit have held that it is.  See In re Kleimar N.V., 220 F Supp 3d 517, 522 (S.D.N.Y. 2016); OJSC Ukrnafta v Carpatsky Petroleum Corp., No. 09-MC-265, 2009 US Dist LEXIS 109492, at *10 (D. Conn Aug. 27, 2009) ("The Intel courts reference to 'arbitral tribunals,' at minimum, would include international-government sanctioned tribunals.").

8464626.1

discovery and preservation of SAPL's assets and property to satisfy that award and assure compliance with the November 29, 2016 Order.

Because all of Section 1782's requirements are satisfied, the Court should grant this application.

**POINT II**

**THE COURT SHOULD GRANT THIS APPLICATION BECAUSE
DOING SO WOULD PROMOTE THE POLICY UNDERLYING SECTION 1782**

"[D]istrict courts must exercise their discretion under § 1782 in light of the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts . . .'" Metallgesellschaft, 121 F.3d at 79 (internal citation omitted).

Granting this application would promote the twin goals of Section 1782.  As set forth above, the requested discovery is needed to ascertain the existence and ensure the preservation of SAPL's assets and properties to satisfy the Interim Award and to determine the extent to which SAPL is in contempt of the November 29, 2016 Order.  Because Blackstone has transacted with FPPL, a subsidiary of SAPL controlled by SAPL, it possesses documents related to SAPL's financials and evidence of SAPL's violation of the November 29, 2016 Order.

Granting such discovery would also encourage Indian courts and arbitral tribunals by example to provide similar means of assistance to our courts.

**POINT III**

**DISCRETIONARY FACTORS WEIGH IN FAVOR
OF GRANTING THIS APPLICATION**

Where, as here, the statutory requirements of Section 1782 are satisfied, the court has discretion to order the requested discovery.  See Intel Corp., 542 U.S. at 255.  In exercising this

8464626.1

discretion, a court may consider: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance"; (3) whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery sought is "unduly intrusive or burdensome." See id. at 264-65. When performing this analysis, courts should consider Section 1782's twin aims: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 81 (2d Cir. 2012). Here, the discretionary factors weigh in favor of granting this application.

**Blackstone is Not a Participant In the Foreign Proceedings**

Blackstone is not a party to the Arbitration Proceeding or before the Calcutta High Court in India. Accordingly, this factor weighs in favor of granting the requested discovery. See Intel, 542 U.S. at 264 (stating that "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.").

**Receptivity of the Foreign Tribunal to Discovery Pursuant to Section 1782**

A foreign tribunal's "receptivity," in the context of Section 1782, considers whether there is "authoritative proof" in the form of "judicial, executive or legislative declarations" that "a foreign tribunal would reject evidence obtained with the aid of section 1782." See Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1100 (2d Cir. 1995). Here, there is no "authoritative proof" that would indicate that evidence obtained pursuant to this application would be rejected

8

in the Arbitration Proceeding or by the Calcutta High Court in India. Therefore this factor also weighs in favor of granting the requested discovery.[2]

**This Application Is Not an Effort to Circumvent Restrictions in Foreign Proof-Gathering**

This factor considers whether a Section 1782 application is made in bad faith. See Minatec Fin. S.A.R.L. v. SI Grp. Inc., No. 1:08-CV-269, 2008 WL 3884374, at *26-27 (N.D.N.Y. Aug. 18, 2008) (ruling that this Intel factor weighed in favor of granting the Section 1782 application in that case, stating "we find nothing within this record to support that Minatec is seeking this information with less than a good faith belief that § 1782 discovery would be helpful to the foreign tribunals and itself"). Here, Rosimuschestvo has filed this application in good faith, seeking to obtain evidence from an entity located in this district that is believed to have evidence needed by Rosimuschestvo and foreign tribunals for use by the Calcutta High Court in India and in the ongoing Arbitration Proceeding in India. Thus, this factor also favors granting this application.

**The Requested Discovery Is Not "Unduly Intrusive or Burdensome"**

This factor considers whether the discovery requests in the application are "sufficiently tailored to the litigation issues for which production is sought." In re Gemeinshcaftspraxis, No. M19-88, 2006 US Dist LEXIS 94161, at *27 (S.D.N.Y. Dec. 29, 2006). As stated above, the document requests in the proposed subpoena attached to this application seek documents that are necessary to ascertain the existence and ensure the preservation of SAPL's assets and properties to satisfy the Interim Award and to determine the extent to which SAPL is in contempt of the November 29, 2016 Order. The discovery sought is finely tailored to provide information as to

---

[2] Of note, a district court may not deny discovery on the ground that the evidence sought is not discoverable or is premature in the foreign proceeding. See Metallgesellschaft, 121 F.3d at 79 (district court abused its discretion in denying discovery on grounds that evidence sought was not discoverable under German law).

SAPL and FPPL's assets and the extent to which FPPL's transaction with Blackstone violated the November 29, 2016 Order.  As such, this factor also weighs in favor of granting this application.[3]

## **CONCLUSION**

For the foregoing reasons, Rosimuschestvo respectfully requests an Order:

1. granting its application for discovery pursuant to 28 U.S.C. § 1782;

2. authorizing it to take discovery from The Blackstone Group L.P., including issuing the Subpoena for the production of documents from The Blackstone Group L.P. in the form attached to the application as Exhibit 1; and

3. directing The Blackstone Group L.P. to comply with such Subpoena issued to it.

Dated: New York, New York
April 5, 2019

Respectfully submitted,

**CARTER LEDYARD & MILBURN LLP**

By
Donald J. Kennedy
Mark R. Zancolli
Iliza B. Weitzer
Two Wall Street
New York, New York 10005
Telephone: (212) 732-3200
Facsimile: (212) 732-3232
Email: kennedy@clm.com
          zancolli@clm.com
          weitzer @clm.com
*Attorneys for Applicant*
*Federal Agency for State Property*
*Management of the Russian Federation*
*(Rosimuschestvo)*

---

[3] In the event that Blackstone contends that it has certain of the requested documents at a location outside the United States, it should be noted "that the location of documents abroad is not necessarily a bar to discovery [under Section 1782]."  See In re Bloomfield Inv. Res. Corp., 315 F.R.D. 165, 167 (S.D.N.Y. 2016) (citing Gemeinshcaftspraxis, 2006 US Dist LEXIS 94161 and In re Potanina, No. 14 Misc. 31, 2015 U.S. Dist LEXIS 22191 (S.D.N.Y. Jan. 9, 2015)).

8464626.1